**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Action No. 1:26-cv-04924

BORJAN, LLC,

Plaintiff.

v.

TOWN OF FAIRPLAY, COLORADO,

Defendant.

---

# COMPLAINT

---

Plaintiff Borjan, LLC ("Borjan"), for its Complaint against Defendant Town of Fairplay, Colorado (the "Town"), states and alleges as follows:

## NATURE OF THE ACTION

1. This is an action to protect public safety and the private property rights of a real estate owner from the wrongful conduct of the Town of Fairplay, Colorado. The Town has turned a blind eye to its obligations to its community, made knowing misrepresentations to its citizens, and put public safety at risk. Borjan has tried all available avenues to avoid filing suit, but the Town has repeatedly rejected every attempt at reasonably resolving this dispute. With nowhere else to turn, Borjan seeks relief in this Court.

2. Through this Complaint, Borjan seeks declaratory judgment, injunctive relief, and damages arising from the Town's refusal to continue processing wastewater generated by the Gemenskap residential development, and its refusal to process pending sewer tap applications, notwithstanding a two-year course of dealing in which the Town approved thirteen consecutive

tap applications for the same development and accepted more than $108,000 in tap fees. Borjan brings claims for a regulatory taking under the Fifth and Fourteenth Amendments to the United States Constitution and 42 U.S.C. § 1983; a taking and damaging of private property under Article II, Section 15 of the Colorado Constitution; promissory and equitable estoppel; and declaratory judgment under 28 U.S.C. §§ 2201–2202.

## JURISDICTION AND VENUE

3. This Court has subject matter jurisdiction over Borjan's federal claims pursuant to 28 U.S.C. § 1331, because they arise under the Constitution and laws of the United States, including the Fifth and Fourteenth Amendments and 42 U.S.C. § 1983, and pursuant to 28 U.S.C. § 1343(a)(3), because Borjan seeks redress for the deprivation, under color of state law, of rights secured by the United States Constitution.

4. This Court has supplemental jurisdiction over Borjan's state-law claims pursuant to 28 U.S.C. § 1367(a), because those claims arise from the same case or controversy as Borjan's federal claims and form part of the same set of transactions and occurrences.

5. This Court has authority to grant declaratory relief pursuant to 28 U.S.C. §§ 2201–2202 and Federal Rule of Civil Procedure 57.

6. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because the Town is located in this District, a substantial part of the events or omissions giving rise to Borjan's claims occurred in this District, and the real property that is the subject of this action is situated in this District.

## PARTIES

7. Plaintiff Borjan, LLC is a Colorado limited liability company and the developer and, as to many individual lots, record owner of Gemenskap, a residential tiny-home community located in unincorporated Park County, Colorado, adjacent to the Town of Fairplay.

8. Defendant Town of Fairplay, Colorado is a Colorado home rule municipality that owns and operates the sanitary sewer collection and treatment system serving, among other areas, the Gemenskap development, notwithstanding that Gemenskap itself lies outside the Town's boundaries in unincorporated Park County. The Town may be served with process on its Town Administrator/Clerk at 901 Main Street, Fairplay, Colorado 80440.

## FACTUAL ALLEGATIONS

### I. The Gemenskap Development

9. Borjan acquired the land that became Gemenskap in 2020. At that time, the property was vacant and unimproved. Borjan developed Gemenskap as a community of attainable tiny homes, providing one of the few affordable housing options in the region.

10. Gemenskap is subject to Park County's zoning and land-use jurisdiction, but because no municipal sewer system was available through the county, Borjan sought to connect Gemenskap's sewer system to the Town's existing sanitary sewer infrastructure.

### II. The Town's Sewer System, Design Review, and Approval of Gemenskap's Connections to the Town's System (2021–2022)

11. Beginning in 2021, in the pre-construction and design phase for Gemenskap's infrastructure, the Town's Assistant Town Administrator and Public Works Director, Mason Green, and the Town's representative, Marty Deline, transmitted design criteria and regulations to Borjan's civil engineer, David Mijares, for use in designing Gemenskap's sewer lines.

12. Throughout the fall of 2021, Borjan's engineer and Town representatives exchanged multiple rounds of drawings and comments concerning the specific design and routing of the Gemenskap sewer lines, including their connection into the Town's existing sewer mains and manhole system.

13. On February 28, 2022, representatives of Gemenskap met in person with Town officials, including Janell Sciacca (Town Administrator) and Mark Weaver, specifically to discuss the sewer line connection for the Gemenskap project.

14. On June 29, 2022, Borjan's principal, Jeremiah Erickson, and Borjan's engineer met with Town representatives, including Marty Deline and Keith Chisholm, at the Town's public works building to review the sewer design drawings for Gemenskap. At that meeting, the Town confirmed that the sewer lines into which Gemenskap's system would connect were part of the Town's own sewer system.

15. In August 2022, Borjan applied to Park County for a right-of-way permit to install the Gemenskap sewer lines. During that process, Mr. Erickson met with Town Administrator Janell Sciacca to determine what approval, if any, the Town required before Gemenskap could connect to the Town's sewer system. Ms. Sciacca informed Mr. Erickson that the Town had no separate permitting process applicable to Gemenskap because Gemenskap is located outside the Town's boundaries, and that so long as the Town's sewer managers, Marty Deline and Keith Chisholm, reviewed and approved the plans, and Park County issued its own permit, Borjan could proceed to construct and connect the Gemenskap sewer lines to the Town's system.

16. In reliance on the Town's representations, Borjan obtained its Park County permit and began excavation and construction of the Gemenskap sewer lines in November 2022.

17. From late 2022 through approximately mid-2025, Town personnel, including Marty Deline and Keith Chisholm, were regularly present on Gemenskap property to inspect the sewer line installation. The connection between Gemenskap's lines and the Town's existing manhole required an unusually deep trench on the south end of the Gemenskap property and was, by all participants' accounts, a substantial and memorable undertaking. At no point during construction or inspection did the Town object to the design, materials, or workmanship of the Gemenskap sewer system, or advise Borjan that a separate dedication or line-acceptance agreement would be required before the system could be used.

## III. The Town's Course of Dealing Approving Individual Tap Applications (2024–2026)

18. Once the connection to the Town's system was complete, Borjan began developing and marketing individual lots within Gemenskap for sale, each requiring its own connection, or "tap," to the sanitary sewer system.

19. On April 29, 2024, Mr. Erickson emailed Town staff, including Ms. Sciacca and Alex Wagner, to clarify the Town's application process for connecting individual Gemenskap lots to the sewer system, noting the ambiguity between the tap application's individual-lot format and its line-extension provisions, which appeared to contemplate a single application for an entire development.

20. On May 2, 2024, Mr. Erickson met with Town Special Projects Coordinator Alex Wagner to discuss the application. Mr. Wagner advised that the Town required only the first portion of the standard application form applicable to the individual lot being connected, and that the remainder could be disregarded.

21. On May 30, 2024, at the Town's request, Borjan provided Mr. Wagner with drawings showing the as-built Gemenskap sewer lines and their connection to the Town's system.

22. On June 18, 2024, the Town notified Borjan that it had approved Borjan's application to connect the first Gemenskap lot, 195 Star Gazing Circle, to the Town's sanitary sewer system. That same day, Borjan paid, and the Town accepted, a tap fee of $8,351.

23. Over the following twenty months, Borjan submitted, and the Town approved, tap applications for at least twelve additional Gemenskap lots, and the Town accepted the associated tap fees on each occasion, including payments on July 12, 2024 (167 and 362 Star Gazing Circle); December 19, 2024 (190 Star Gazing Circle); January 6, 2025 (284 Star Gazing Circle); January 22, 2025 (402 Star Gazing Circle); May 9, 2025 (340 Star Gazing Circle); July 11, 2025 (213 and 229 Star Gazing Circle); July 31, 2025 (363 Star Gazing Circle); September 30, 2025 (412 Star Gazing Circle); January 31, 2026 (444 Star Gazing Circle); and February 18, 2026 (322 Star Gazing Circle).

24. In total, between June 18, 2024, and February 18, 2026, the Town approved thirteen tap applications submitted by Borjan and accepted a total of $108,563 in tap fees from Borjan for the privilege of connecting Gemenskap lots to the Town's sanitary sewer system. The only basis the Town could have for accepting $108,563 in tap fees from Borjan was that the Town had accepted Gemenskap's sewer system.

25. Further, at no point during this two-year course of dealing did the Town request that Borjan execute a line dedication or line acceptance agreement, question the design or integrity of the Gemenskap sewer system, or otherwise condition its approval of tap applications on anything beyond the routine application materials Mr. Wagner had identified in May 2024.

26. The Town separately bills and collects monthly user fees from Gemenskap homeowners for processing their wastewater, further confirming that the Town has treated the Gemenskap sewer system as connected to, and served by, the Town's system.

**IV. The Town Reverses Course and Halts Tap Approvals (April 2026 to Present)**

27. In April 2026, when Borjan submitted additional tap applications for new Gemenskap lots, the Town departed from the process it had followed without exception for the prior thirteen approvals. The Town's representative, Deron Dircksen of SGM, demanded that Borjan submit an extensive package of information and documentation that, by its nature, was relevant only to a review of the entire Gemenskap sanitary sewer system as originally constructed, not to the individual lot tap applications Borjan had submitted.

28. Upon information and belief, the reason for the Town's changed position was a broken sewer line in part of the Town's sewer system.

29. In March 2026, Mr. Erickson discovered that an existing Town sewer line—that passed through an adjacent residential community and into which the Gemenskap sewer system connected—had broken. Wastewater was seeping from the ground. Mr. Erickson responded immediately, using cleaning supplies and other materials to ensure public safety was protected.

30. The Town, on the other hand, did nothing. Mr. Erickson notified Town Administrator Sciacca, but the Town took no action. It was not until weeks later when Mr. Erickson appeared at a public meeting of the Town's trustees that the Town even acknowledged the wastewater leak, much less took any action to address it.

31. On April 16, 2026, Town Administrator Sciacca directed Keith Chisholm to arrange for a third-party contractor, DRC, to scope and plug the damaged Town line. In what has become

a pattern of deceit and fabrication, the Town later disputed that it had authorized or was responsible for the cost of that work and sought to shift the expense to Borjan.

32. Tellingly, at this same time, Ms. Sciacca told Borjan to direct all further communications regarding the Gemenskap sewer matter to the Town Attorney, and Ms. Sciacca advised that Town staff were no longer authorized to speak with Mr. Erickson directly.

33. Once the Town had plugged the manhole nearest the broken sewer line, the wastewater seepage stopped. However, wastewater from the homes that fed into the broken line started to fill the manhole. In essence, the manhole served as a wastewater holding tank. The Town has never addressed this wastewater. Instead, Borjan managed this wastewater itself by paying to have the manhole pumped out.

34. In April and May 2026, Mr. Erickson followed up regarding two then-pending tap applications for lots not located on the damaged line (and which were directly adjacent to previously approved lots). Mr. Erickson separately requested to appear before the Town's Board of Trustees to address both the tap delays and the dispute over responsibility for the damaged line.

35. On May 1, 2026, Ms. Sciacca denied the request to appear on the Board's agenda, stating that the Mayor and Trustees had directed that the matter not be placed on any agenda pending completion of an investigation by the Town's insurer, CIRSA, and confirmed that the pending tap applications were instead being routed to Town representative Dircksen for review under the new submittal requirements.

36. On May 1, 2026, Mr. Dircksen sent Borjan an initial review letter identifying the Town's Sewer Service & Street Cut Application, the Town of Fairplay Wastewater Design Criteria, Technical Specifications, and Construction Details, and the Town of Fairplay Wastewater Rules

and Regulations as the governing submittal requirements, and enclosed the Town's Wastewater Rules and Regulations adopted November 17, 2025 and related design criteria documents, both adopted more than three years after Gemenskap's sewer system was designed, inspected, and constructed under the Town's prior Rules and Regulations adopted September 21, 2015.

37. Borjan, through Mr. Erickson, repeatedly clarified to Mr. Dircksen and to Town Administrator Sciacca that it was only seeking tap permits for two specific, previously unbuilt lots (241 and 699 Star Gazing Circle) directly adjacent to lots that had already received approved taps in December 2024 and July 2025, respectively. The Town nonetheless maintained its position that a complete submittal package addressing the entire sewer system was required before any further individual tap applications would be processed.

38. On June 5, 2026, Borjan's counsel wrote to the Town's counsel summarizing this course of dealing, explaining that the Town's demand for a full sewer-system review under regulations adopted long after Gemenskap's system was built, inspected, and repeatedly connected to the Town's system was inconsistent with the Town's own thirteen-application course of dealing, and reasserted Borjan’s request for an in-person meeting with Town officials to establish an appropriate path forward. The Town refused to meet.

39. Instead, the Town demanded that Borjan participate in a formal (and costly) mediation as the only way the Town would discuss potentially resolving the parties’ disputes.

40. Borjan again asked for a direct meeting with the Town. The Town again refused.

41. Accordingly, in hopes of avoiding litigation, Borjan agreed to mediate. The mediation was on July 27, 2026. The parties did not resolve the dispute.

42. On September 4, 2026, Borjan's counsel again wrote to the Town, through the Town Counsel, demanding written confirmation that the Town would (a) continue to process all wastewater generated by the Gemenskap community, and (b) repair the broken Town sewer line into which the Gemenskap system connects, and (c) reimburse $850 in out-of-pocket costs Borjan had incurred addressing wastewater discharging from the damaged line. Borjan's letter advised the Town that Borjan would cease servicing the damaged line after September 15, 2026, after which responsibility for managing the resulting wastewater discharge would fall to the Town.

43. In late September, in a last-ditch attempt to avoid having to file suit, Erickson asked the Town to meet to discuss this dispute. The Town agreed to hold a private meeting between Erickson and certain Town staff and public officials, but not in a public session, and only if Erickson agreed to not be represented by legal counsel at the meeting. Erickson declined those conditions, and the parties did not meet.

44. The Town has never responded to Borjan's September 4, 2026, letter, has not repaired the damaged sewer line, has not confirmed that it will continue processing Gemenskap's wastewater, and has not reimbursed Borjan's out-of-pocket expenses. The September 15, 2026, deadline identified in that letter has passed without any response from the Town.

45. Wastewater coming from Town-approved sewer taps is currently backing up in the Town’s manhole, creating a public safety hazard. The Town refuses to take any action to repair the broken sewer line that is causing the wastewater backup to occur.

46. The tap applications for 241 and 699 Star Gazing Circle remain pending and have been effectively denied by the Town because the Town will not process the applications. Further action on the applications is futile given the Town’s pattern of conduct.

## V. Harm to Borjan

47. As a direct result of the Town's actions and inactions, Borjan has been unable to connect additional Gemenskap lots to sanitary sewer service and, as a result, has been unable to market, close, or convey those lots to buyers.

48. Because Gemenskap is a high-altitude, short-season development, the building and selling season available to Borjan in any given year is limited. Borjan's inability to obtain tap approvals during the 2026 season has foreclosed Borjan's ability to generate revenue from lot sales for that entire season.

49. The Town's refusal to repair the damaged sewer line into which the Gemenskap system connects has also required Borjan to incur ongoing out-of-pocket costs to manage wastewater discharge that the Town, as owner and operator of that line, is responsible for addressing, and threatens further sewage backup onto Gemenskap property now that Borjan has ceased performing that service.

50. Borjan has detrimentally relied, to its substantial financial harm, on the Town's course of conduct spanning 2021 through early 2026, during which the Town's officials repeatedly represented, by word and by repeated approval of tap applications and acceptance of tap fees, that Gemenskap's connection to the Town's sewer system was authorized and would continue to be honored.

## FIRST CLAIM FOR RELIEF

### Regulatory Taking in Violation of the Fifth and Fourteenth Amendments (42 U.S.C. § 1983)

51. Borjan incorporates by reference all preceding paragraphs as though fully set forth herein.

52. The Fifth Amendment to the United States Constitution, applicable to the states and their political subdivisions through the Fourteenth Amendment, provides that private property shall not be taken for public use without just compensation.

53. A regulatory taking occurs where government action, though not a direct appropriation of or physical invasion onto property, denies an owner all economically viable use of the property. *Lucas v. S.C. Coastal Council*, 505 U.S. 1003, 1015–1019 (1992) (a regulation that leaves property "economically idle" effects a per se taking).

54. Borjan holds a constitutionally protected property interest in its record ownership of the individual Gemenskap lots awaiting sewer connection, including the lots addressed as 241 and 699 Star Gazing Circle, and in the sewer collection infrastructure Borjan designed, financed, and constructed in reliance on the Town's approval and course of dealing. Borjan also holds a constitutionally protected property interest in its record ownership of individual lots within Gemenskap that may be developed in the future.

55. The Town's sanitary sewer system is the only means by which lots within the Gemenskap development can lawfully dispose of wastewater consistent with Park County's health and building codes. There is no alternative sewer or septic disposal option economically or practically available to Borjan for the undeveloped Gemenskap lots.

56. Borjan had a reasonable, investment-backed expectation that lots it developed within Gemenskap would continue to receive sewer taps from the Town, an expectation created and reinforced by the Town's design review and construction oversight in 2021 and 2022, the Town's express representations that no Town-specific approval process beyond that review was

required, and the Town's unbroken practice of approving and accepting fees for thirteen consecutive tap applications between June 2024 and February 2026.

57. By refusing, since April 2026, to process any further tap applications for Gemenskap lots, the Town's actions have economically impacted Borjan by burdening his property rights, and more specifically, by rendering Borjan's remaining undeveloped Gemenskap lots incapable of any economically viable use. The economic impact of the Town's refusal has greatly reduced the value of Borjan's property to its detriment.

58. The Town's refusal to act does not lead to a mere diminution in the value of Borjan's property; it is the elimination of all value, as Borjan's remaining undeveloped Gemenskap lots cannot lawfully be occupied, built upon, or sold absent a functioning sewer tap, and thus retain no value for their intended and only reasonably available use.

59. Moreover, the Town's refusal to act is not a generally applicable zoning restriction; it is a targeted, ad hoc refusal to continue performing a service the Town itself agreed to provide, applied selectively against Borjan notwithstanding the Town's unbroken course of approving thirteen prior, functionally identical applications for the same development, an action which rings of retaliation and does not arise from a program to promote the common good.

60. In the alternative, and even under the multi-factor test set forth in *Penn Central Transportation Co. v. New York City*, 438 U.S. 104, 124 (1978), the economic impact on Borjan, Borjan's reasonable investment-backed expectations arising from the Town's own course of dealing, and the character of the government action here — a targeted refusal to perform a previously undertaken function, rather than a generally applicable land-use rule — together establish a taking.

61. This dispute is ripe for adjudication. The Town has reached a final, definitive position with respect to the two pending applications and it has unequivocally signaled that it will not process further applications. The Town has informed Borjan, through its engineer and its attorney, that it will not process any further tap applications for Gemenskap lots absent a complete reengineering of the Gemenskap sewer system, which imposes an unlawful burden and cost disproportionate to the individual lot-level approval process the Town itself established and followed for more than two years.

62. The Town has dug in its heels on this threshold requirement, leaving Borjan without any avenue to obtain approval short of undertaking that disproportionate and unlawful burden, and further pursuit of the Town's newly imposed process would be futile, as the Town has given no indication of any circumstances under which it would resume individual tap approvals.

63. As a direct and proximate result of the Town's conduct, Borjan has been deprived of all economically viable use of its undeveloped Gemenskap lots without the payment of just compensation, in violation of the Fifth and Fourteenth Amendments to the United States Constitution and 42 U.S.C. § 1983.

64. Borjan is entitled to just compensation for the taking, to declaratory and injunctive relief compelling the Town to resume processing tap applications under the process it applied to Borjan's thirteen prior applications, and to an award of reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 1988.

## SECOND CLAIM FOR RELIEF

**Taking and Damaging of Private Property Without Just Compensation (Colo. Const. art. II, § 15)**

65. Borjan incorporates by reference all preceding paragraphs as though fully set forth herein.

66. Article II, Section 15 of the Colorado Constitution provides that private property shall not be taken or damaged, for public or private use, without just compensation.

67. Colorado's constitutional takings guarantee is broader than its federal counterpart because it independently prohibits both the taking and the damaging of private property, and the Colorado Supreme Court has recognized that a regulation which renders property economically idle, or which goes too far under a fact-specific inquiry weighing the economic impact and the character of the governmental action, can constitute a compensable taking under this provision. *Animas Valley Sand & Gravel, Inc. v. Bd. of Cnty. Comm'rs*, 38 P.3d 59, 63–65 (Colo. 2001); *Kobobel v. State*, 249 P.3d 1127, 1133–1134 (Colo. 2011).

68. For the same reasons alleged above with respect to Borjan's federal takings claim, the Town's refusal to process further sewer tap applications for Gemenskap has rendered Borjan's remaining undeveloped lots economically idle and without any economically viable use, and independently, the Town's ownership and operation of a damaged sewer line that discharges wastewater onto and threatens to back up sewage onto Gemenskap property constitutes a further taking or damaging of Borjan's property within the meaning of Article II, Section 15.

69. Borjan is entitled to just compensation under Article II, Section 15 of the Colorado Constitution for the taking and damaging of its property, in an amount to be proven at trial.

## THIRD CLAIM FOR RELIEF

**Promissory Estoppel**

70. Borjan incorporates by reference all preceding paragraphs as though fully set forth herein.

71. The Town made a series of promises to Borjan which the Town should have reasonably expected would induce action or forbearance on the part of Borjan.

72. Specifically, beginning in 2021 and continuing through the Town's approval of thirteen consecutive individual tap applications between June 2024 and February 2026, the Town, through its authorized Town Administrator, Special Projects Coordinator, and sewer system personnel, promised Borjan that: (a) if the Town's sewer managers reviewed and approved Borjan's plans and Park County issued its own permit, Borjan could connect the Gemenskap sewer system to the Town's system at two distinct connection points; and (b) the Town would continue to process individual lot tap applications for Gemenskap lots on the same terms it had applied to Borjan's prior applications.

73. The Town should reasonably have expected that these promises would induce Borjan to invest substantial capital in designing, permitting, and constructing the Gemenskap sewer system and in continuing to develop and market individual Gemenskap lots for sale, particularly given the Town's own multi-year design review, construction oversight, and unbroken course of approving and accepting fees for thirteen consecutive tap applications.

74. The Town's promises induced such action because, in reliance on the Town's promises, Borjan obtained its Park County permit and designed and constructed the Gemenskap sewer system beginning in November 2022, paid $108,563 in tap fees that the Town accepted

without reservation, and continued to develop and market individual Gemenskap lots for sale on the understanding that sewer taps for additional lots would continue to be made available.

75. Injustice can be avoided only by enforcement of the Town's promises because, having invested substantial capital in developing and connecting the Gemenskap sewer system in reliance on the Town's promises, Borjan cannot recoup that investment or otherwise develop its remaining Gemenskap lots without sewer service, and the Town's refusal to honor its promises has halted development at Gemenskap with no means of resuming (absent enforcement of those promises).

76. As a direct and proximate result of its reliance on the Town's promises, Borjan has been prejudiced and its position has been detrimentally changed: it has been unable to market or sell additional Gemenskap lots, has incurred carrying costs and lost sales during a development season it cannot recover, and has incurred out-of-pocket costs addressing wastewater discharge from a Town-owned line the Town has refused to repair.

77. Borjan is entitled to enforcement of the Town's promises and to damages sufficient to prevent the injustice that would otherwise result from the Town's refusal to honor them.

## <u>FOURTH CLAIM FOR RELIEF</u>

### Equitable Estoppel

78. Borjan incorporates by reference all preceding paragraphs as though fully set forth herein.

79. Equitable estoppel arises where one party induces another to detrimentally change position in reasonable reliance on that party's actions through words, conduct, or silence.

80. As to the party estopped, the doctrine requires: (1) conduct amounting to a false representation or concealment of material facts, or conduct calculated to convey an impression

inconsistent with facts later asserted; (2) intention or expectation that such conduct would be acted upon; and (3) actual or constructive knowledge of the real facts. As to the party asserting estoppel, the doctrine requires: (1) lack of knowledge and the means of knowledge of the truth; (2) reliance on the conduct of the party estopped; and (3) action taken in reliance that prejudicially changed the claimant's position. *City of Thornton v. Bijou Irr. Co.*, 926 P.2d 1, 75–76 (Colo. 1996); *V Bar Ranch LLC v. Cotten*, 233 P.3d 1200, 1211–1212 (Colo. 2010).

81. Equitable estoppel may be applied against a governmental entity, including a municipality, where necessary to prevent manifest injustice and where the party asserting the doctrine reasonably relied on the conduct or representations of the governmental entity or its authorized agents.

82. Beginning in 2021 and continuing through the Town's approval of thirteen consecutive individual tap applications between June 2024 and February 2026, the Town, through its authorized Town Administrator, Special Projects Coordinator, and sewer system personnel, represented to Borjan, through words and through the Town's own consistent conduct, that:

a. the Gemenskap sewer system, once designed and inspected to the Town's specifications and connected to the Town's system, was properly connected and authorized;

b. no dedication, acceptance, or line-extension agreement beyond the individual lot tap application process was required; and

c. the Town would continue to process individual lot tap applications for Gemenskap lots according to that established process.

83. The Town intended, or at minimum should have reasonably expected, that Borjan would act in reliance on these representations and this course of conduct, including by continuing to invest in constructing, marketing, and selling individual lots within Gemenskap on the understanding that sewer service would be available.

84. The Town had actual or constructive knowledge of the true facts regarding the ownership, condition, and connection of its own sewer infrastructure, including the pre-existing condition of the Town-owned line into which the Gemenskap system connects.

85. Notwithstanding that knowledge and its own course of dealing, the Town changed its position by disclaiming ownership of, and responsibility for, the Gemenskap sewer system and the broken Town line into which it partially connects, and by asserting that Borjan must satisfy code and permitting requirements enacted after the Gemenskap sewer system had already been designed, inspected, approved, and connected to the Town's system.

86. The Town intended that its conduct would be acted upon by Borjan and at the time of the Town’s conduct, Borjan reasonably believed that the Town intended its conduct to be acted upon.

87. Borjan lacked knowledge, and the means of knowledge, that the Town would reverse its established course of dealing and refuse to process further applications, particularly given the absence of any indication of that risk across two years and thirteen successive approvals.

88. Borjan reasonably relied on the Town's representations and course of conduct by expending substantial sums to design, construct, and connect the Gemenskap sewer system to the Town's system; by paying $108,563 in tap fees the Town accepted without reservation; and by

continuing to develop and market individual Gemenskap lots for sale on the understanding that sewer taps would be available in due course.

89. As a direct and proximate result of its reliance, Borjan has been prejudiced and its position has been detrimentally changed: it has been unable to market or convey additional Gemenskap lots, has incurred carrying costs and lost sales during a development season it cannot recover, and has incurred out-of-pocket costs addressing wastewater discharge from a Town-owned line the Town has refused to repair.

90. Application of equitable estoppel against the Town is necessary to prevent manifest injustice, given the extraordinary and specific course of dealing the Town established and then abandoned only after an unrelated defect in the Town's own infrastructure came to light.

91. Borjan is entitled to a judgment estopping the Town from denying that the Gemenskap sewer system is properly connected to and accepted by the Town's sewer system, and from refusing to process tap applications for Gemenskap lots on terms other than those the Town applied to Borjan's prior thirteen applications.

**FIFTH CLAIM FOR RELIEF**

**Declaratory Judgment (28 U.S.C. §§ 2201–2202; Fed. R. Civ. P. 57)**

92. Borjan incorporates by reference all preceding paragraphs as though fully set forth herein. An actual, substantial, and justiciable controversy exists between Borjan and the Town concerning their respective rights and obligations with respect to the Gemenskap sewer system, warranting a declaration of rights pursuant to 28 U.S.C. §§ 2201–2202 and Federal Rule of Civil Procedure 57.

93. Borjan seeks a judicial declaration that:

a. the Town has accepted the Gemenskap sewer system as part of, and connected to, the Town's own sanitary sewer system at two distinct connection points, based on

the Town's design review, construction inspection, and more than two years of unbroken approval of individual lot tap applications and acceptance of associated tap fees, and the Town is responsible for the sewer system's future operation and maintenance;

b. the Town is obligated to continue processing wastewater generated by the Gemenskap sewer system and to accept pending and future individual lot tap applications for Gemenskap on the same basis as it accepted Borjan's prior thirteen applications;

c. the Town, as owner and operator of the sewer lines into which the Gemenskap system connects, is obligated to repair the damaged segment of that line;

d. the Town is obligated to reimburse Borjan for the out-of-pocket costs Borjan has incurred, and continues to incur, in addressing wastewater discharging from the damaged sewer line that is the Town's responsibility to repair and maintain;

e. the Town is responsible for managing the wastewater that flows into and backs up in the damaged line, and Borjan has no continuing obligation to manage or remediate that wastewater;

f. the Town may not impose upon Borjan, as a condition of issuing tap permits for the remaining undeveloped lots at Gemenskap, any code or permitting requirements enacted after the Gemenskap sewer system was designed, inspected, approved, and connected to the Town's system, including the Town's Wastewater Rules and Regulations adopted November 17, 2025, and related design criteria; and

g. Borjan is entitled to have its pending and future tap permit applications for Gemenskap lots evaluated under the Town's Wastewater Rules and Regulations adopted September 21, 2015, and the process the Town applied to Borjan's prior thirteen applications, and not under any code or submittal requirements enacted or adopted thereafter.

94. A declaration of the parties' rights and obligations will resolve the controversy between the parties, will clarify the legal relationship between Borjan and the Town going forward, and will avoid further, ongoing harm to Borjan and to the residents of Gemenskap whose wastewater the Town's sewer system serves.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Borjan, LLC respectfully requests that the Court enter judgment in its favor and against Defendant Town of Fairplay, Colorado, and grant the following relief:

A. A declaration that the Town has accepted the Gemenskap sewer system, that the Town is obligated to continue processing wastewater generated by the Gemenskap sewer system, and that the Town is obligated to repair the damaged sewer line into which the Gemenskap system connects and to reimburse Borjan's out-of-pocket costs incurred addressing wastewater from that line, that Borjan has no continuing obligation to manage wastewater flowing into that line, and that the Town may not impose code or permitting requirements enacted after the Gemenskap sewer system was approved and connected as a condition of issuing tap permits for the remaining undeveloped Gemenskap lots;

B. A preliminary and permanent injunction requiring the Town to resume processing Borjan's pending and future tap applications for Gemenskap lots on the same terms as its prior

thirteen approvals, and requiring the Town to repair the damaged sewer line and continue accepting wastewater from the Gemenskap system pending resolution of this action;

C. A judgment awarding Borjan just compensation for the taking and damaging of its property under the Fifth and Fourteenth Amendments and Article II, Section 15 of the Colorado Constitution, in an amount to be proven at trial;

D. A judgment estopping the Town from denying acceptance of the Gemenskap sewer system and from refusing to process Gemenskap tap applications on terms other than those previously applied and enforcing the Town's promises to Borjan regarding the continued acceptance of wastewater and processing of tap applications for the Gemenskap development;

E. An award of Borjan's reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 1988 and any other applicable authority;

F. Pre-judgment and post-judgment interest as allowed by law; and

G. Such other and further relief as the Court deems just and proper.

**JURY DEMAND**

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff Borjan, LLC demands a trial by jury on all issues so triable.

Respectfully submitted,

/s/ Ryan M. Sugden

Ryan M. Sugden (CO Atty. No. 49499)
**HUSCH BLACKWELL LLP**
1801 Wewatta Street, Suite 1000
Denver, Colorado 80202
Attorneys for Plaintiff Borjan, LLC